UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

John Doe; The Door; Make the Road New York; New York
Immigration Coalition; Sanctuary for Families; Urban
Justice Center,

                          Plaintiffs,

          v.                                                    19 Civ. 8892 (AJN)

U.S. Immigration and Customs Enforcement; U.S.
Department of Homeland Security; Donald J. Trump, in his
official capacity as President of the United States; Chad
Wolf, in his official capacity as Acting Secretary of
Homeland Security; Matthew T. Albence, in his official
capacity as U.S. Immigration and Customs Enforcement
Acting Director; Thomas Decker, in his official capacity as
U.S. Immigration and Customs Enforcement New York
Field Office Director,

                          Defendants.

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO DISMISS

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2614/2721
Fax: (212) 637-2686
Email: rebecca.friedman@usdoj.gov
          tomoko.onozawa@usdoj.gov

REBECCA R. FRIEDMAN
TOMOKO ONOZAWA
Assistant United States Attorneys, *Of Counsel*

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................1

   A.    Plaintiff Doe Lacks Article III Standing ...................................................1

   B.    The Organizational Plaintiffs Lack Associational Standing. ....................2

   C.    Plaintiff NYIC Lacks Standing to Sue in Its Own Right .........................2

   D.    Plaintiffs' APA Claims Should Be Dismissed .........................................4

        1.    Plaintiffs Are Not Within the Zone of Interests of Sections 1226 or 1357 ...........................................................................................4

        2.    The Directive Is Not a Final Agency Action ...............................4

        3.    The Location of Immigration Enforcement Actions in Public Areas Is Committed to Agency Discretion by Law ...............................6

   E.    Plaintiffs' Constitutional Claims Fail as a Matter of Law ......................8

        1.    Plaintiffs' Fifth Amendment Claim Fails as a Matter of Law ...................8

        2.    Plaintiffs' First Amendment Claims Fail as a Matter of Law.....................9

        3.    Plaintiffs' Sixth Amendment Claim Fails as a Matter of Law..................10

   F.    Plaintiffs' Common Law Immunity Claim and APA Claim Fail as a Matter of Law ......................................................................................12

        1.    There Is No Common Law Privilege Against Federal Immigration Enforcement in Courthouses....................................................12

        2.    Congress Established a Comprehensive Immigration Detention Scheme That Displaced Prior Common Law on Civil Immigration Enforcement Arrests .................................................................14

CONCLUSION....................................................................................................................16

# TABLE OF AUTHORITIES

PAGE(S)

Cases

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967).............................................................................. 5

*Arizona v. United States*,
567 U.S. 387 (2012)............................................................................ 15

*Bridges v. Wixon,*
326 U.S. 135 (1945)............................................................................ 10

*Brown v. Jacobson*,
No. 98 Civ. 0565 (LBS), 1999 WL 1125122 (S.D.N.Y. Dec. 8, 1999)................... 8

*Brown v. Stone*,
66 F. Supp. 2d 412 (E.D.N.Y. 1999) ...................................................... 8

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
868 F.3d 110 (2d Cir. 2017)................................................................. 3

*Citizens for Responsibility & Ethics in Wash. v. Trump*,
939 F.3d 131 (2d Cir. 2019)................................................................. 4

*Cooper v. City of Plano*,
No. 4:10 Civ. 689, 2011 WL 4100721 (E.D. Tex. Aug. 19, 2011) ......................... 9

*Csoka v. Cty. of Suffolk*,
85 F. Supp. 2d 117 (E.D.N.Y. 2000) ...................................................... 8

*Dep't of Commerce v. New York*,
139 S. Ct. 2551 (2019)........................................................................ 7

*East Bay Sanctuary v. Trump*,
932 F.3d 742 (9th Cir. 2018) ............................................................... 4

*Frozen Food Express v. United States*,
351 U.S. 40 (1956)......................................................................... 4, 5

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)........................................................................... 3

*Heckler v. Chaney*,
470 U.S. 821 (1985)........................................................................... 6

*Herrera-Inirio v. INS.*,
    208 F.3d 299 (1st Cir. 2000) .......................................................................... 12, 13

*Hoffman v. Bailey*,
    996 F. Supp. 2d 477 (E.D. La. 2014) ...................................................................... 10

*Kwong Hai Chew v. Colding*,
    344 U.S. 590 (1953) ................................................................................................ 10

*Lewis v. Casey*,
    518 U.S. 343 (1996) .................................................................................................. 8

*Nachwalter v. Christie*,
    805 F.2d 956 (11th Cir. 1986) ............................................................................... 14

*Natural Resources Defense Council v. Dep't of Interior*,
    18 Civ. 6903 (AJN), 2019 WL 4601722 (S.D.N.Y. Sept. 23, 2019) ......................... 7

*Olsen v. Stark Homes, Inc.*,
    759 F.3d 140 (2d Cir. 2014) ..................................................................................... 4

*People v. Winfrey*,
    20 N.Y.2d 138 (N.Y. 1967) ..................................................................................... 11

*Reno v. American-Arab Anti Discrimination Committee*,
    525 U.S. 471 (1999) ........................................................................................... 1, 10

*Ryan v. U.S. Immigration & Customs Enf't*,
    382 F. Supp. 3d 142 (D. Mass. 2019) ............................................................... 12, 14

*State of New York v. ICE*,
    No. 19 Civ. 8876 (JSR), 2019 WL 6906274 (S.D.N.Y. Dec. 19, 2019) ......... 12, 14, 15

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................................ 1, 2

*Turner v. Cty. of Cook*,
    No. 05 Civ. 2890, 2005 WL 3299822 (N.D. Ill. Dec. 2, 2005) ................................. 9

*U.S. Army Corps of Engineers v. Hawkes Co., Inc.*,
    136 S. Ct. 1807 (2016) ............................................................................................. 5

*U.S. Gypsum Co. v. Muszynski*,
    161 F. Supp. 2d 289 (S.D.N.Y. 2001) .................................................................. 4, 5

*United States ex rel. Turner v. Williams,*
  194 U.S. 279 (1904) .......................................................................................... 9

*United States v. Carpio-Leon,*
  701 F.3d 974 (4th Cir. 2012) ........................................................................... 10

*United States v. Goodwin,*
  625 F.2d 693 (5th Cir. 1980) ...................................................................... 11, 12

*United States v. Green,*
  305 F. Supp. 125 (S.D.N.Y. 1969) .................................................................. 13

*United States v. Lett,*
  944 F.3d 467 (2d Cir. 2019) ........................................................................ 11, 12

*United States v. Pinto,*
  850 F.2d 927 (2d Cir. 1988) ............................................................................ 11

*United States v. Portillo-Munoz,*
  643 F.3d 437 (5th Cir. 2011) ........................................................................... 10

*United States v. Romero-Bustamante,*
  337 F.3d 1104 (9th Cir. 2003) ........................................................................... 6

*United States v. Valenzuela-Bernal,*
  458 U.S. 858 (1982) ......................................................................................... 11

*United States v. Verdugo-Urquidez,*
  494 U.S. 259 (1990) ...................................................................................... 9, 10

*Webster v. Doe,*
  486 U.S. 592 (1988) ................................................................................... 6, 7, 8

Statutes

5 U.S.C. § 701(a)(2) .............................................................................................. 6, 7, 8

5 U.S.C. § 706(2)(A) ................................................................................................ 6, 7

8 U.S.C. § 1226 ......................................................................................................... 14

8 U.S.C. § 1229(e) ............................................................................................... 14, 15

8 U.S.C. § 1357 ..................................................................................................... 6, 14

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, Div. C,
  110 Stat. 3009-546 (Sept. 30. 1995) .............................................................. 15

Other Authorities

H.R. Rep. No. 109–233 (2005) ...................................................................................................... 15

**ARGUMENT**

**A.      Plaintiff Doe Lacks Article III Standing**

In their opposition, Plaintiffs assert that Defendants "have not claimed that Mr. Doe's fears of ICE arrest are unfounded, nor represented that he would not be arrested by ICE while seeking an order of protection in Family Court against his abusive ex-partner."  Pls.' Mem. of Law in Opp. to Mot. to Dismiss ("Pls.' Opp.") at 4–5 [ECF No. 74].  This contention misses the point.  Doe's fears of ICE arrest are unfounded because he has not established "a credible threat of prosecution thereunder."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).  Doe admits that no removal proceedings have been commenced against him, and alleges none of the factors that make him part of the class of "specific, targeted aliens" who are subject to the Directive.  *See* Defs.' Mem. of Law in Support of Mot. to Dismiss ("Defs.' Mem."), at 8–9 [ECF No. 64].  Plaintiffs' claim that other aliens have been arrested at or near courthouses—without reference to whether these aliens met the specific factors under the Directive, *see* Compl. ¶¶ 4, 62, 69—does not prove their speculative assertion that Doe *personally* is under a "credible threat of prosecution" if he were to go to Family Court.

Moreover, Plaintiffs erroneously assert that the "special circumstances" clause in the Directive, *see* Directive at 1, presents a credible threat of prosecution for Doe.  But that clause simply provides that "family members or friends accompanying the target alien . . .  will not be subject to civil immigration enforcement action" unless "the individual poses a threat to public safety or interferes with ICE's enforcement actions."  *Id.*  Similarly, ICE's "case-by-case" discretion to make specific enforcement decisions, *see* Directive, at 1, reiterates the general principle that the Executive Branch has prosecutorial discretion in the context of removal proceedings, *see Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 490–91

(1999), and does not establish that Doe himself is under a "threat of future enforcement" that is "substantial." *Susan B. Anthony List*, 573 U.S. at 164.

## B.   The Organizational Plaintiffs Lack Associational Standing

The Organizational Plaintiffs asserted only associational standing with respect to their Fifth and Sixth Amendment claims, common-law privilege claims and APA claims. *See* Compl. Count One (Defendants "violate[d] the constitutionally-protected liberty interests of . . . the clients and members of Organizational Plaintiffs"); *id.* Count Two (Defendants "prevent[ed] criminal defendant clients and members of Organizational Plaintiffs from fully and freely participating in state court proceedings"); *id.* Count Four (Defendants violated common law immunity against civil arrest and caused "the clients and members of Organizational Plaintiffs [to] have suffered . . . injury"); and *id.* Count Five (Defendants' alleged agency action violated the APA and caused "noncitizen clients and members of Organizational Plaintiffs . . . injury").[1] Plaintiffs have not rebutted Defendants' arguments that they lack associational standing because they failed to allege or demonstrate how any specific member or members would otherwise have standing to sue in their own right. Defs.' Mem. at 10–12. Accordingly, the Court should dismiss Plaintiffs' Fifth and Sixth Amendment, common-law privilege and APA claims as to the Organizational Plaintiffs for lack of standing.

## C.   Plaintiff NYIC Lacks Standing to Sue in Its Own Right

Although NYIC alleges injury because it "has had to divert its time and resources aimed at uniting immigrant communities to addressing the frequent crises that arise as a result of ICE's presence in and around state courthouses," Pls.' Opp. at 8, the Court must scrutinize the injuries alleged by NYIC, namely, spending more time "providing counseling and advocacy for other

---

[1] Defendants do not contest that the Organizational Plaintiffs (except for NYIC) have alleged standing to sue in their own right under the First Amendment. *See* Defs.' Mem. at 10 n.5.

issues [that] must instead be spent fighting against ICE's courthouse arrest policy," and organizing events "to raise awareness." Compl. ¶ 109.  As discussed below, and in Defendants' opening brief, *see* Defs.' Mem. at 12–13, the Complaint does not allege a sufficiently concrete injury-in-fact sufficient to confer standing because NYIC's time spent "raising awareness" on an issue affecting the immigrant community is inherent in its mission.

In *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 110 (2d Cir. 2017), the Second Circuit explained two ways in which an organization could establish "perceptible impairment" of its activities sufficient to meet the "injury-in-fact" requirement.  First, an organization may show that a policy has impeded, and will continue to impede, the organization's ability to carry out its responsibilities.  *Id.* at 110 (citation omitted).  Second, "where an organization diverts its resources away from its *current activities*, it has suffered an injury . . . independently sufficient to confer organizational standing."  *Id.* at 111 (emphasis added).  NYIC has not alleged standing under either theory.

With respect to the first prong, it is not sufficient merely to allege that the organization could "move its agenda forward" if a different policy were in place, *see* Compl. ¶ 109; the impediments referenced in *Centro* are in the nature of a restriction or a prohibition.  *See Centro*, 868 F.3d at 110.  Here, there is no impediment in the nature of a restriction or other prohibition on NYIC's activities: it is not barred from zealously advocating for the interests of the immigrant community.  Under the second prong, an organization must be compelled to act in a manner that is different from its "current activities," such as by diverting resources from counseling and referral services in order to identify and counteract racially discriminatory steering practices, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 369, 379 (1982); or diverting money from advocacy and counseling to investigate and pursue housing discrimination complaints on behalf

of a client, *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 158 (2d Cir. 2014).  NYIC has not alleged that it has diverted resources away from its current activities, and thus has not alleged a cognizable injury-in-fact to pursue its First Amendment claim.

**D.    Plaintiffs' APA Claims Should Be Dismissed**

**1.    Plaintiffs Are Not Within the Zone of Interests of Sections 1226 or 1357**

As set forth in Defendants' opening brief, the Organizational Plaintiffs do not fall within the zone of interests of the civil arrest provisions of sections 1226 and 1357 of the INA.  *See* Defs.' Mem. at 13–15.  Plaintiffs have not pointed to anything in either statutory provision that evinces Congressional intent to permit suit by anyone other than the alien affected.  Moreover, Plaintiffs' reliance on the Ninth Circuit's decision in *East Bay Sanctuary v. Trump*, 932 F.3d 742 (9th Cir. 2018) (*see* Pls.' Opp. at 10), is misplaced, because that decision dealt not with the arrest provisions of the INA, but its asylum provisions.  Unlike the steps Congress took "to ensure that pro bono legal services of the type that the [organizational plaintiffs in *East Bay*] provide are available to asylum seekers," *id.* at 768, Congress took no action with respect to aliens who have been arrested by ICE in public locations.  Likewise, *Citizens for Responsibility & Ethics in Wash. v. Trump*, 939 F.3d 131, 158 (2d Cir. 2019), *see* Pls.' Opp. at 10, is not analogous to this case.  *See id.* (businesses asserting competitive injury from President Trump's businesses fell within the zone of interests of the Emoluments Clause of the constitution).

**2.    The Directive Is Not a Final Agency Action**

To the extent Plaintiffs urge this Court to look at the "practical effects of the agency action in evaluating" whether there is a final agency action, *see* Pls.' Opp. at 13–14, the cases on which they rely are inapposite because all of those decisions involved agency actions that immediately had binding, legal impacts on regulated parties.  In *U.S. Gypsum Co. v. Muszynski*, 161 F. Supp. 2d 289 (S.D.N.Y. 2001), for example, plaintiff applied to the Army Corps of

Engineers ("COE") for a permit to dump sediment from a channel into a designated ocean floor site. *Id.* at 290. At the time, the COE's practice, with the Environmental Protection Agency's ("EPA") concurrence, was to deny a permit if the dredged material contained contaminants ("PCBs") exceeding a certain level, and to grant such a permit if PCB levels were below that level. *Id.* Initially, EPA and COE determined that plaintiff's material was appropriate for disposal at the site because the PCB concentration fell below the threshold, and indicated their intention to approve the application. *Id.* Two months later, however, EPA and COE entered into a Memorandum of Agreement ("MOA") that significantly lowered the PCB threshold, which led EPA to retract its prior concurrence to grant plaintiff the permit. *Id.* at 291. Although EPA's non-concurrence was not dispositive to the COE's decision to grant or deny a permit, the permit was not granted and plaintiff eventually sued under the APA, challenging the new PCB standard in the agencies' new MOA. *Id.* Judge Rakoff held that "the new PCB standard, as set forth in the Memorandum of Agreement," was a final agency action because it was "binding and resulted in tangible legal consequences for plaintiff." *Id.* at 292.

This case is different because while the establishment of a revised PCB standard created a new threshold requirement that immediately impacted the *Gypsum* plaintiff and others like it, here, the Directive does not, on its face or even as a "practical" matter, compel any alien to take or not take action, determine his or her rights or obligations, or create legal consequences. Plaintiffs' other cases are likewise distinguishable. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 138–39 (1967) (APA challenge to agency regulations interpreting the Federal Food, Drug, and Cosmetic Act); *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1811–13 (2016) ("approved jurisdictional determination" stating agency's view on whether plaintiffs' property was subject to Clean Water Act enforcement was "final agency action"); *Frozen Food*

*Express v. United States*, 351 U.S. 40, 44 (1956) (order listing commodities which were not exempt from federal permitting requirements of federal statute was "final agency action").

### 3.      The Location of Immigration Enforcement Actions in Public Areas Is Committed to Agency Discretion by Law

Plaintiffs have failed to clear the hurdle of 5 U.S.C. § 701(a)(2), which precludes judicial review of agency action under the APA "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *See* Defs.' Mem. at 15–17; *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  Plaintiffs cite 8 U.S.C. § 1357(a)(3), *see* Pls.' Opp. at 14, which prohibits ICE from executing warrantless arrests in "dwellings," but that statutory provision codifies the Fourth Amendment right to be free from unreasonable seizures while in one's home, *United States v. Romero-Bustamante*, 337 F.3d 1104, 1107 (9th Cir. 2003), and provides no meaningful standard by which this Court can assess the propriety of civil immigration enforcement actions in public locations outside one's home.

Plaintiffs also argue that the "meaningful standard" requirement of § 701(a)(2) "go[es] to the merits," and that this Court can fulfill § 701(a)(2) by analyzing Plaintiffs' claims under the common law privilege and the First, Fifth, and Sixth Amendments, and "general requirements of reasoned agency decisionmaking."  Pls.' Opp. at 11–12 & n.5.  But this conflates 5 U.S.C. § 701(a)(2), which prohibits review of "agency action . . . committed to agency discretion by law," with the scope-of-review provisions in 5 U.S.C. § 706(2), which permits the Court to set aside agency action that is "arbitrary, capricious, contrary to law, or an abuse of discretion."  As Justice Scalia explained in *Webster v. Doe*, 486 U.S. 592 (1988):

> This explains the seeming contradiction between § 701(a)(2)'s disallowance of review to the extent that action is 'committed to agency discretion,' and § 706's injunction that a court shall set aside agency action that constitutes 'an abuse of discretion.'  Since, in the former provision, 'committed to agency discretion by law' means 'of the sort that is traditionally unreviewable,' it operates to keep

certain categories of agency action out of the courts; but when agency action is appropriately in the courts, abuse of discretion is of course grounds for reversal.

*Id.* at 609–10 (Scalia, J., dissenting).

In *Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019), the Supreme Court considered an APA challenge to the Secretary's decision to reinstate a question about citizenship on the 2020 census questionnaire. *Id.* at 2561. The Court first considered the government's threshold argument that the Secretary's decision was not reviewable under § 701(a)(2) because the decision was "committed to agency discretion by law." *Id.* at 2567–68. The Court disagreed, holding that the Census Act was not drawn in a way that "furnishes no meaningful standard by which to judge the Secretary's action," but rather, "constrains the Secretary's authority to determine the form and content of the census in a number of ways." *Id.* at 2568 (citing statutory provisions in Census Act). "Because this is not a case in which there is 'no law to apply,'" the Court held that the Secretary's decision was "amenable to review for compliance with those and other provisions of the Census Act, according to the general requirements of reasoned agency decisionmaking," *id.* at 2569, and reviewed the Secretary's decision under § 706(2)(A) of the APA. *Id.* at 2569–76. Similarly, in *Natural Resources Defense Council v. Dep't of Interior* ("*NRDC*"), 18 Civ. 6903 (AJN), 2019 WL 4601722 (S.D.N.Y. Sept. 23, 2019), this Court performed a similar justiciability analysis to determine whether the Federal Advisory Committee Act ("FACA") provided meaningful standards for judicial review of an APA claim relating to the establishment and management of a federal advisory committee, and considered "the language, structure, and legislative history" of FACA, as well as federal regulations and agency manuals regarding federal advisory committees. *Id.* at *12–15.

Here, Plaintiffs have failed to undertake the § 701(a)(2) analysis in *Commerce* and *NRDC*. Their submissions have not identified anything in the INA specifying the "law to apply"

or a "meaningful standard" by which this Court can assess ICE's determination about which public locations are appropriate for civil immigration enforcement actions.  Because the INA is broadly drawn and furnishes no meaningful standard with respect to this issue, judicial review of the Directive is not available under § 701(a)(2) of the APA.  *See Webster*, 486 U.S. at 600–01.

**E.     Plaintiffs' Constitutional Claims Fail as a Matter of Law**

      **1.     Plaintiffs' Fifth Amendment Claim Fails as a Matter of Law**

Plaintiffs argue that Defendants' conduct "renders Plaintiffs' Fifth Amendment rights to due process illusory."  Pls.' Opp. at 16.  However, Plaintiffs have not illustrated how the Defendants' conduct prevents Plaintiffs from utilizing their "right to bring to court a grievance." *Lewis v. Casey*, 518 U.S. 343, 354 (1996).  The Supreme Court has held that the Fifth Amendment does not require defendants to ensure that plaintiffs can "*litigate effectively* once in court."  *Id.* at 354 (emphasis in original).  Here, Plaintiffs do not allege that the government has obstructed their ability to "prepar[e] and fil[e]" legal papers.  *Id.* at 346 (internal quotation marks and citation omitted).  Rather, Plaintiffs discuss "meaningful access to courts," Pls.' Opp. at 16, and many of Plaintiffs' allegations relate to later actions, such as a witness cooperating with the prosecution.  *See* Compl. ¶ 97; *see also id.* ¶ 84 (parties less willing to participate in problem solving courts because they typically require additional appearances).  The cases on which Plaintiffs rely, Pls.' Opp. at 17, also involve allegations after the action was brought in court. *See Csoka v. Cty. of Suffolk*, 85 F. Supp. 2d 117, 118, 120 (E.D.N.Y. 2000) (allegations of harassment after party had already filed divorce action); *Brown v. Stone*, 66 F. Supp. 2d 412, 435 (E.D.N.Y. 1999) (allegations related to withdrawing lawsuit).[2]

---

[2] In *Brown v. Jacobson*, No. 98 Civ. 0565 (LBS), 1999 WL 1125122 (S.D.N.Y. Dec. 8, 1999) (Pls.' Opp. at 17), the plaintiff did not meet the burden of alleging actual injury with regard to the government's actions leading to a "chilling effect" on his pursuing a legal claim.  *Id.* at *4.

Plaintiffs' argument that Defendants' conduct "signal[s] to undocumented individuals that vindicating their rights in court comes with the risk of deportation," Pls.' Opp. at 16, is unavailing because the right of access to court does not mean that an alien is immune from ICE enforcement actions. *See Turner v. Cty. of Cook*, No. 05 Civ. 2890, 2005 WL 3299822, at *15 (N.D. Ill. Dec. 2, 2005) (holding that "[t]he right of reasonable access to the courts does not entail immunity from arrest warrants issued by lawful process"); *Cooper v. City of Plano*, No. 4:10 Civ. 689, 2011 WL 4100721, at *5 (E.D. Tex. Aug. 19, 2011) (dismissing a denial-of-access claim where plaintiff alleged that "there were outstanding warrants for [his] arrest" and "he feared arrest should he appear at the courthouse"), *report and recommendation adopted,* 2011 WL 4101160 (E.D. Tex. Sept. 13, 2011).[3]

### 2.    Plaintiffs' First Amendment Claims Fail as a Matter of Law

Contrary to Plaintiffs' argument, Pls.' Opp. at 17–19, there is threshold issue concerning whether aliens present in the country have First Amendments rights that would protect them from courthouse arrests.  First, Plaintiffs fail to address U*nited States ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904), which holds that deportable aliens are outside the scope of those individuals who can sue for violations of the First Amendment.

Second, Plaintiffs argue that *Verdugo-Urquidez* acknowledged that non-citizens received constitutional protections, Pls.' Opp. at 18, but they neglect to mention that the holding is limited to specific types of aliens.  *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 270 (1990) (aliens receive constitutional protections when they have come within the United States and developed substantial connections with this country).  In addition, the cases cited in *Verdugo-*

---

[3] In addition, as explained in Section A, Plaintiff Doe has not pleaded facts evidencing that his fear of arrest is anything other than conjectural, hypothetical, and speculative.

*Urquidez* which discuss an alien's first amendment rights, such as *Bridges v. Wixon,* 326 U.S. 135, 137-38 (1945) and *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 n.5 (1953), relate to lawful residents, not parties that have entered unlawfully.  Plaintiffs' attempt to narrow the holdings from *Verdugo-Urquidez* and *Hoffman v. Bailey*, 996 F. Supp. 2d 477, 488 (E.D. La. 2014) to extraterritorial application of First Amendment protections, Pls.' Opp. at 18, also ignores that the cases more broadly considered the meaning of "the people" within the First Amendment.  *See Hoffman*, 996 F. Supp. 2d at 488; *Verdugo-Urquidez*, 494 U.S. at 265.[4]

Plaintiffs also attempt to distinguish Defendants' First Amendment arguments by arguing that Plaintiffs are not contending there is a right to evade enforcement, and instead are fighting ICE's ability to conduct civil arrests in specific locations.  Pls.' Opp. at 19.[5]  However, the relevant statutes provide for broad authority to search for an alien in the United States, subject to specific location-based exceptions not applicable here, and given the specific location exemptions, the implication is that ICE's search (and arrest) power is not limited at other locations.  Defs.' Mem. at 29.   In addition, as explained in Section E.1, the right of access to court does not mean that an alien is immune from ICE's ability to conduct enforcement actions.

### 3.    Plaintiffs' Sixth Amendment Claim Fails as a Matter of Law

Plaintiffs' opposition sidesteps Defendants' argument that the overall federal and state statutory scheme recognizes ICE's authority to arrest and detain an alien who happens to be the subject of state criminal proceedings, by providing a process by which a state prosecutor can

---

[4] *United States v. Carpio-Leon*, 701 F.3d 974, 978 (4th Cir. 2012) and *United States v. Portillo-Munoz*, 643 F.3d 437, 442 (5th Cir. 2011) also broadly considered the meaning of "the people" within the Second Amendment, and contrary to Plaintiffs' argument (Pls.' Opp. at 18–19 n.9), should not be ignored because they address a different constitutional amendment.

[5] Plaintiffs wrongly assert that Defendants cite *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 474, 488 (1999), for this point.  Defendants offered *Reno* as a case where the court rejected First Amendment challenges brought by non-citizens, Defs.' Mem. at 19, and Plaintiffs do not distinguish *Reno* on this point.

submit a writ of *habeas corpus ad prosequendum* to the federal government to secure the alien's

attendance.  *See* Defs.' Mem. at 22–23.  *See also United States v. Lett*, 944 F.3d 467, 470–71 (2d

Cir. 2019) (federal court's authority to release criminal defendants under Bail Reform Act

("BRA") is not in conflict with government's authority to detain aliens under the INA, and the

courts cannot "order the Executive Branch to choose between criminal prosecution and

removal").  Defendants cannot be liable for violating an alien's Sixth Amendment rights by

arresting the alien at a specific public location where federal and state law together require the

*state* to ensure the alien's Sixth Amendment rights by exercising prosecutorial due diligence if a

defendant is in ICE custody or is otherwise unavailable.  *See People v. Winfrey*, 20 N.Y.2d 138,

141 (N.Y. 1967) ("[I]t is now familiar law that a post-indictment delay is not justified solely

because the defendant is a Federal prisoner . . . The rationale for this rule is that a procedure

exists for securing the release of a Federal prisoner for trial on State charges . . . .").

Moreover, as the Supreme Court held in *United States v. Valenzuela-Bernal*, 458 U.S.

858, 872 (1982), "the responsibility of the Executive Branch faithfully to execute the

immigration policy adopted by Congress justifies the prompt deportation of illegal-alien

witnesses upon the Executive's good-faith determination that they possess no evidence favorable

to the defendant in a criminal prosecution," and it is the criminal defendants' "duty to make

some showing of materiality" to establish violation of their right to compulsory process under the

Sixth Amendment.  *Id.* at 873.  Plaintiffs' Sixth Amendment claim therefore fails because

nothing in their complaint alleges that an alien who was the subject of an ICE civil immigration

enforcement action in or near a courthouse had evidence that was "material and favorable" to a

criminal defendant's defense and was precluded from testifying.  *Id.* at 873.  Finally, Plaintiffs'

reliance on *United States v. Pinto*, 850 F.2d 927 (2d Cir. 1988) and *United States v. Goodwin*,

625 F.2d 693 (5th Cir. 1980) is misplaced.  *See* Pls.' Opp. at 21, n.11.  The application of the
Directive to specific, targeted aliens in or around courthouses is simply not analogous to a claim
of prosecutorial overreach where a prosecutor or agent intimidated or threatened a potential
defense witness from testifying.

**F.      Plaintiffs' Common Law Immunity Claim and APA Claim Fail as a Matter of Law**

      **1.      There Is No Common Law Privilege Against Federal Immigration
Enforcement in Courthouses**

Contrary to Plaintiffs' assertion, Pls.' Opp. at 22–24, there is no state or federal common
law privilege against federal immigration enforcement arrests.  While Judge Rakoff and Judge
Talwani rejected Defendants' arguments,[6] the decisions ignored the plenary power of the federal
government over immigration and that, by the time the INA was enacted, the common law
privilege against "arrest" was limited to service of process.

The federal government's authority over immigration is "plenary" and "pervasive," and
"is uniquely a matter of federal, not local, concern."  *See Herrera-Inirio v. INS.*, 208 F.3d 299,
307 (1st Cir. 2000).  As the Second Circuit has explained in the context of the BRA, given the
federal statute authorizing an immigration action (detention for removal), the fact that another
law authorizes a different action (release on bail for criminal charges) does not bear on the
legality of the immigration action.  *See Lett*, 944 F.3d at 471 ("The district court's bail release
order under the BRA thus did not preclude the government from detaining Lett pursuant to the
INA as an inadmissible alien subject to removal.").  Nor does a federal district court have
"authority to compel another sovereign or judge in federal administrative proceedings to release
or detain a defendant."  *Id.* at 472 (internal quotation marks and citation ommitteda).  While *Lett*

---

[6] *See generally Ryan v. U.S. Immigration & Customs Enf't*, 382 F. Supp. 3d 142 (D. Mass.
2019); *State of New York v. ICE*, No. 19 Civ. 8876 (JSR), 2019 WL 6906274 (S.D.N.Y. Dec. 19,
2019).

addressed the interplay of two federal laws, if a federal law cannot prevent an authorized immigration enforcement action, then it stands to reason that a state law cannot prevent it given the Supremacy Clause and the federal government's plenary power over immigration. *Herrera-Inirio*, 208 F.3d at 307 ("Because Congress possesses plenary authority over immigration-related matters, it may freely displace or preempt state laws in respect to such matters."); *see also* Defs.' Mem. at 30.

Defendants illustrated how the privilege applies when the jurisdiction would otherwise lack authority over the person but for his or her appearance in a jurisdiction to attend a court proceeding as a witness or party. Defs.' Mem. at 23–26. Plaintiffs' attempt to distinguish *United States v. Green*, 305 F. Supp. 125, 128 (S.D.N.Y. 1969), as "inapplicable" because it involved service of a criminal subpoena, Pls.' Opp. at 22–23, is unavailing. *Green*, like numerous other cases, illustrates that the immunity privilege does not apply to parties who were personally served while in different jurisdictions if they could have been served through other means. *Green*, 305 F. Supp. at 127–29.

While Plaintiffs argue that Defendants have not cited a single case that expressly restricts the common law privilege to immunity of service from process, Pls.' Opp. at 24, they ignore that cases since the dawn of long-arm jurisdiction have not discussed the privilege as applying to arrests, and recent cases all explain that when an out-of-state defendant is subject to civil process under a forum state's long-arm statute, the privilege does not apply. Plaintiffs also ignore the unique context of immigration law—given the federal government's plenary power over immigration and that aliens are subject to enforcement actions in any jurisdiction, like in the service of process cases cited above and in the opening brief, *see* Defs.' Mem. at 25–26, the rationale for a common law arrest privilege does not apply here.

2.     **Congress Established a Comprehensive Immigration Detention Scheme That Displaced Prior Common Law on Civil Immigration Enforcement Arrests**

Even assuming a privilege exists with respect to courthouse arrests, Congress established a comprehensive system regarding immigration arrests displacing any common law privilege.[7] Congress spoke directly to immigration arrests in the INA, 8 U.S.C. §§ 1226, 1357(a).  In addition, Congress amended the INA in 2006 to add 8 U.S.C. § 1229(e), which expressly addresses immigration enforcement actions against aliens at courthouses.  Therefore, the statutory scheme displaces any common law privilege on arrests at or near courthouses, to the extent it exists.  Defs.' Mem. at 27–29.

Plaintiffs' argument that in light of *state* common law and historic state powers, Congress needed to make its intention to displace the common law "unmistakably clear," Pls.' Opp. at 25–26, is mistaken.  Because the INA addresses immigration arrests, under the Supremacy Clause, "federal courts may not use state common law to re-write a federal statute."  *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir. 1986).  Moreover, Defendants are not contending that the federal government's regulatory authority over aliens allows it to disregard *any* state law.  Pls.' Opp. at 28.  The federal government is not telling the state to enforce, or not to enforce, state law; instead, it is exercising discretion to arrest aliens in public spaces in and around courthouses, and federal law does not contemplate restrictions on ICE's ability to effect such arrests.  While Plaintiffs argue that the *Ryan* and *New York* decisions both held that the "INA's grant of arrest authority cannot be read to override the longstanding and familiar common-law privilege or to endorse ICE agents' interference with state courts and prosecutions," Pls.' Opp. at 26, both decisions failed to appreciate the breadth of the relevant provisions and that the ability

---

[7] As Defendants argued, there is no federal common law privilege against immigration arrests because federal courts cannot create their own common law where Congress has already addressed the issue.  Defs.' Mem. at 27–28.

to conduct immigration enforcement actions is within the federal government's "broad,

undoubted power." *Arizona v. United States*, 567 U.S. 387, 394 (2012).

Moreover, Plaintiffs' contention (*see* Pls.' Opp. at 27), and likewise, Judge Rakoff's

ruling in *New York*, that § 1229(e)'s "undefined reference to 'an enforcement action' . . . likely

meant *criminal* arrests" and anticipated "criminal arrests by state and local police forces," 2019

WL 6906274, at *11, is completely unsupported by the legislative history.  The House Report

preceding § 1229(e)'s enactment shows that its purpose was to:

> [E]nsure that immigration enforcement agents . . . do not initiate contact with
> abusers, call abusers as witnesses or rely[] on information furnished by or derived
> from abusers to apprehend, detain and attempt to remove victims of domestic
> violence, sexual assault and trafficking, as prohibited by section 384 of IIRIRA
> [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996].

H.R. Rep. 109–233, at 120 (2005).  The House Report further provides that "[8 U.S.C.

§ 1229(e)] establishes a system to verify that removal proceedings are not based on information

prohibited by section 384 of IIRIRA," and requires certifications in specific circumstances.

*Id.* at 121.[8]  Notably, Congress made clear that "[r]emoval proceedings filed in violation of

section 384 of IIRIRA shall be dismissed," H.R. Rep. 109–233, at 121, but expressly stated that

"further proceedings can be brought if not in violation of section 384."  *Id*.  Accordingly, nothing

in § 1229(e)'s text or legislative history shows that Congress distinguished between ICE

"criminal" arrests and "civil" arrests, contemplated "criminal arrests by state and local police

forces," or sought to constrain ICE from arresting aliens at or around courthouses at any time.

---

[8] Section 384 prohibits the government from "mak[ing] an adverse determination of admissibility
or deportability of an alien under the [INA] using information furnished solely by" an abusive
spouse or parent, among other persons, and prohibits the disclosure of information relating to an
alien who is the beneficiary of certain types of relief.   *See* IIRIRA, Pub. L. 104-208, Div. C, 110
Stat. 3009-546 (Sept. 30, 1996) (codified as 8 U.S.C. § 1367).

**CONCLUSION**

For the foregoing reasons,  the Court should dismiss Plaintiffs' complaint in its entirety.

Dated: January 16, 2020
New York, New York

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By:      /s/   Tomoko Onozawa
REBECCA R. FRIEDMAN
TOMOKO ONOZAWA
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:    (212) 637-2614/2721
Fax:    (212) 637-2686
Email: rebecca.friedman@usdoj.gov
           tomoko.onozawa@usdoj.gov